James C. Herndon
John L. Stosich
Alan Johnston
Pike Herndon Stosich & Johnston, P.A.
O. E. Bell Center
151 North Ridge, Suite 210
P.O. Box 2949
Idaho Falls, ID  83403-2949
Telephone:  208/528-6444
Telefax:      208/528-6447
ISB Nos. 1083, 3351 & 7709

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

|  |  |
|---|---|
| RONALD R. AND SUSAN M. WARNECKE,<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>NITROCISION, LLC, an Idaho limited liability company; WILLIAM RIGBY, an individual; DIANE KIEHN, an individual, TRUTECH, L.L.C., a Nevada limited liability company; NITROCISION HANFORD LLC, an Idaho limited liability company,<br><br>Defendants/Counterclaimants. | Case No.  CV 2010-00334-CWD<br><br>**ANSWER, COUNTERCLAIM AND DEMAND FOR JURY TRIAL** |

Defendants/Counterclaimants Nitrocision, LLC ("Nitrocision"), William F. Rigby

("Rigby"), Diane Kiehn ("Kiehn"), TRUTech, LLC ("TRUTech") and Nitrocision Hanford, LLC

("Hanford") (collectively "Defendants") jointly and severally answer Plaintiffs' Complaint and

Demand for Jury Trial ("Complaint"), and file their counterclaim against Plaintiffs/Counter-defendants Ronald R. Warnecke ("Warnecke") and Susan M. Warnecke ("Susan") (collectively "the Warneckes") as follows:

## ANSWER

### FIRST DEFENSE

1.      The Warneckes' Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

2.      Defendants deny all allegations of the Warneckes' Complaint not specifically admitted herein, or admitted by an affirmative allegation of fact.

### THIRD DEFENSE

3.      Answering ¶ 1.1, Defendants are without sufficient information as to the current residence of the Warneckes to admit or deny, and therefore deny the same; Defendants admit that Warnecke is the former President, CEO and/or Managing Member of Nitrocision, and affirmatively allege that he continues to be a Member of said limited liability company; Defendants admit that Mr. Warnecke is a 50% owner of TRUTech.

4.      Answering ¶¶ 1.2-1.3, Defendants admit the same.

5.      Answering ¶ 1.4, Defendants admit that Kiehn is Rigby's daughter, resides in Ada County, Idaho, and that she served for a short time as CEO of Nitrocision in an interim capacity.

6.      Answering ¶ 1.5, Defendants admit that TRUTech is a Nevada limited liability company in good standing registered to do business in Idaho, with its principal place of business located at 151 N. Ridge Ave., Suite 260, Idaho Falls, Idaho 83402, and that Robert Copp, is the registered agent of said corporation.  Mr. Copp is the manager but is listed incorrectly as a member on the 2010 annual report form.  Defendants deny the remaining allegations of ¶ 1.5.

7.      Answering ¶ 1.6, Defendants admit the same.

8.      Answering ¶¶ 2.1 and 2.2, Defendants deny the same, and affirmatively allege that no federal question is involved in this case, nor does complete diversity of citizenship exist between the parties.

9.      Answering ¶¶ 3.1 and 3.2, Defendants deny the same.

10.     Answering ¶ 3.3, Defendants deny the same, and affirmatively allege that neither Nitrocision nor TRUTech are subject to the provisions of the Consolidated Omnibus Budget Reconciliation Act ("COBRA") codified at 29 U.S.C. §§ 1161-1169, as, at all times relevant hereto, neither company had twenty or more employees during the calendar year.

11.     Defendants deny ¶ 3.4.

12.     Answering ¶ 3.5, Defendants are without sufficient information to admit or deny the allegations of said paragraph, and therefore, deny the same.

13.     Defendants admit ¶ 3.6, and affirmatively allege that until mid-January 2009, Warnecke was the CEO and/or Managing Member of Nitrocision, and as such owed a fiduciary duty to other Members and shareholders.

14.     Answering ¶ 3.7, Defendants are without sufficient information to admit or deny the allegations of said paragraph, and therefore, deny the same.

15.     Answering ¶ 3.8, Defendants admit that Susan is listed as a member or manager of Hanford, and affirmatively allege that Jeanne Rigby, wife of Defendant Rigby, is also listed as a member and/or manager of Hanford; Defendants deny the remaining allegations of ¶ 3.8.

16.     Defendants admit ¶¶ 3.9 and 3.10, with the exception of the last sentence of ¶ 3.10, which sentence is a statement of belief, and does not require admission or denial.

17.     Answering ¶ ¶ 3.11, 3.12 and 3.13, Defendants have located a document

purporting to be an employment agreement between Warnecke and Nitrocision; however, Defendants have not located any documents evidencing approval of said agreement by the Nitrocision Board of Directors, nor are they able to ascertain whether said document was validly executed.   Defendants have been unable to locate any documentation that the alleged employment agreement was extended beyond its original five-year term.   Therefore, Defendants are without sufficient information to admit or deny the allegations of said paragraphs, and deny the same.   Defendants affirmatively allege that in the event an employment agreement between Warnecke and Nitrocision existed, Warnecke breached the terms of said agreement, excusing Nitrocision from any further performance under said agreement.

18.     Answering ¶¶ 3.14, 3.15 and 3.16, Defendants have been unable to locate a fully executed copy of any Amended and Restated Operating Agreement for Nitrocision, nor have any corporate documents adopting an amended operating agreement by the Nitrocision Board of Directors been located.   Based upon the foregoing, Defendants are without sufficient information to admit or deny the allegations of ¶¶ 3.14, 3.15 and 3.16, and therefore deny the same.

19.     Answering ¶¶ 3.17, 3.18, 3.19, 3.20 and 3.21, Defendants admit that Warnecke submitted expense reports to Nitrocision, but affirmatively allege that many of the reports were duplicative and sought multiple reimbursements for the same expense.   Defendants are in the process of ascertaining the validity of the expenses claimed and verifying amounts previously paid to Warnecke.   Until the process is completed, Defendants are without sufficient information to admit or deny the remaining allegations of  ¶¶ 3.17, 3.18, 3.19, 3.20 and 3.21, and therefore, deny the same.

20.     Defendants have been unable to verify Warnecke's alleged paid time off and/or vacation pay.   Defendants have likewise been unable to verify that the Nitrocision Board of

Directors adopted the policies and procedures alleged by the Warneckes' to provide for payment of accrued paid time off and/or vacation pay. Based upon the foregoing, Defendants are without sufficient information to admit or deny the allegations of ¶¶ 3.22, 3.23, 3.24, 3.25 and 3.26, and therefore deny the same.

21.     Answering ¶¶ 3.27, 3.28, 3.29, 3.30 and 3.31, Defendants admit TRUTech loaned money to Nitrocision; however, the Warneckes have not provided necessary financial records to substantiate monies allegedly loaned by the Warneckes to Nitrocision and/or TRUTech. Therefore, Defendants are without sufficient information to admit or deny the remaining allegations of said paragraphs, and therefore deny the same.

22.     Defendants deny the allegations of ¶¶ 3.32 and 3.33.

23.     Answering ¶ 3.34, Defendants admit that on January 25, 2009, Kiehn did not have an ownership interest in the company; defendants deny the remaining allegations of ¶ 3.34.

24.     Defendants deny the allegations of ¶¶ 3.35, 3.36, 3.37, 3.38, 3.39, 3.40 and 3.41.

25.     Answering ¶¶ 3.42, 3.43, 3.44, 3.45, 3.46 and 3.47, Defendants deny the same, and affirmatively allege that TRUTech and Nitrocision each had fewer that 20 employees during any calendar year material hereto, and therefore neither company was subject to the Consolidated Omnibus Budget Reconciliation Act ("COBRA").

26.     Answering ¶ 4.1, Defendants re-allege their answers to ¶¶ 1.1 through 3.47 as though fully set forth herein.

27.     Answering ¶¶ 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 4.10 and 4.11, Defendants deny the same, and affirmatively allege that Nitrocision and TRUTech were not subject to COBRA provisions.

28.     Answering ¶ 4.12, Defendants re-allege their answers to ¶¶ 1.1 through 4.11 as

though fully set forth herein.

29.     Defendants deny ¶¶ 4.13, 4.14, 4.15, 4.16, 4.17, 4.18 and 4.19, subject to the affirmative allegations of fact and qualified admissions and denials previously set forth herein.

30.     Answering ¶ 4.20, Defendants re-allege their answers to ¶¶ 1-4.19 as though fully set forth herein.

31.     Answering ¶¶ 4.21 and 4.22, Defendants admit that Warnecke was an employee of Nitrocision until his resignation in March 2009, and affirmatively allege that until mid-January 2009, Warnecke was also the CEO and/or Managing Member of said corporation, and as such owed a fiduciary duty to the company and to other Members.

32.     Answering ¶¶ 4.23, 4.24, 4.25, 4.26, 4.27 and 4.28, Defendants deny the same, subject to the affirmative allegations of fact, affirmative defenses, and qualified admissions and denials previously set forth herein.

33.     Answering ¶ 4.29, Defendants re-allege their answers to ¶¶ 1.1 through 4.28 as though fully set forth herein.

34.     Answering ¶¶ 4.30, 4.31, 4.32, 4.33, 4.34, 4.35, and 4.36, Defendants deny the same, subject to the affirmative allegations of fact, affirmative defenses, and qualified admissions and denials previously set forth herein.

35.     Answering ¶ 4.37, Defendants re-allege their answers to ¶¶ 1.1 through 4.36 as though fully set forth herein.

36.     Answering ¶¶ 4.38, 4.39, 4.40, 4.41, 4.42, 4.43, 4.44, 4.45 and 4.46, Defendants deny the same, and affirmatively allege that at all times material hereto prior to mid-January 2009 Warnecke was the CEO and/or Managing Member of Nitrocision and TRUTech, and as such, owed a fiduciary duty to Defendants and to other members of said companies.

37.     Answering ¶ 4.47, Defendants re-allege their answers to ¶¶ 1.1 through 4.46 as though fully set forth herein.

38.     Answering ¶¶ 4.48, 4.49, 4.50, 4.51 and 4.52, Defendants deny the same.

39.     Answering ¶ 4.53, Defendants re-allege their answers to ¶¶ 1.1 through 4.52 as though fully set forth herein.

40.     Answering ¶ 4.54, Defendants admit the same.

41.     Defendants deny the allegations of ¶¶ 4.55 and 4.56.

42.     Answering ¶ 4.57, Defendants re-allege their answers to ¶¶ 1.1 through 4.56 as though fully set forth herein.

43.     Defendants admit the allegations of ¶ 4.58.

44.     Answering ¶¶ 4.59, 4.6 and 4.61, Defendants deny the same.

45.      Answering ¶ 5.1, Defendants deny the same.

**FOURTH DEFENSE**

46.     The Warneckes' damages, if any, were the result of their joint and several actions and failures to act.

**FIFTH DEFENSE**

47.     The Warneckes' claims are barred by the equitable doctrine of unclean hands.

**SIXTH DEFENSE**

48.     The Warneckes' claims are barred by their own prior material breach of their agreements with the Defendants.

**SEVENTH DEFENSE**

49.     The Warneckes' claims are barred due to their failure to mitigate their damages.

**EIGHTH DEFENSE**

50.     The Warneckes' claims are barred based upon the doctrine of accord and satisfaction.

**NINTH DEFENSE**

51.     Defendants have valid set-offs against any claim by the Warneckes, which are equal to or greater than amounts claimed by the Warneckes.

**TENTH DEFENSE**

52.     The Warneckes' claims are barred under the doctrines of waiver and/or estoppel.

**ELEVENTH DEFENSE**

53.     The Warneckes impeded the performance of Defendants' obligations under any agreements between the parties, and failed to timely perform their obligations thereunder, which was the direct cause of any damage or loss suffered by the Warneckes under such agreement(s).

**TWELFTH DEFENSE**

54.     The Warneckes' claims against Defendants are subject to conditions precedent and/or subsequent, which have not been performed or satisfied by the Warneckes.

**THIRTEENTH DEFENSE**

55.     Defendants have been required to retain the firm of Pike, Herndon, Stosich & Johnston, P.A. to defend the within action, and Defendants are entitled to recover their reasonable attorneys fees and costs for said representation pursuant to the agreements between the parties and pursuant to applicable federal and state law, including I.C. §§ 12-120, 12-121, 45-615 and 45-617 and Fed.R.Civ.P. 54 in an amount to be determined by the Court.

**FOURTEENTH DEFENSE**

56.     Defendants reserve the right to amend the within Answer to include additional

affirmative defenses and affirmative allegations of fact.

WHEREFORE, having fully answered the Warneckes' Complaint, Defendants pray for relief as follows:

1.      That the Warneckes' Complaint be dismissed and they take nothing thereby.

2.      For attorneys fees and costs in an amount to be determined by the Court.

3.      For such other and further relief as the Court deems just, proper and equitable under the circumstances.

## COUNTERCLAIM

As and for a counterclaim against the Warneckes, Defendants, jointly and severally complain as follows:.

1.      The Warneckes are residents of the State of Idaho.

2.      Nitrocision is an Idaho limited liability company, with its principal place of business at 151 N. Ridge Ave., Suite 260, Idaho Falls, ID  83402.

3.      TRUTech is a Nevada limited liability company, duly registered as a foreign entity in Idaho, with its principal place of business located at 151 N. Ridge Avenue, Suite 260, Idaho Falls, ID  83402.

4.      Hanford is an Idaho limited liability company, with its principal place of business located at 151 N. Ridge Ave., Suite 260, Idaho Falls, ID  83402

5.      Rigby is a resident of Idaho Falls, Idaho.

6.      Kiehn is a resident of Ada County, Idaho.

7.      Nitrocision was incorporated as an Idaho limited liability company on December 4, 2001.

8.      From December 4, 2001 until mid-January, 2009, Warnecke was the CEO and/or Managing Member of Nitrocision.

9.      TRUTech was incorporated as a Nevada limited liability company on or about December 31, 1998.

10.     On or about August 12, 1999, TRUTech was registered as a foreign limited liability company with the State of Idaho.

11.     From December 31, 1998 until March 2009, Warnecke was the Managing Member and/or CEO of TRUTech.

12.     Hanford was incorporated as an Idaho limited liability company on or about November 3, 2008.

13.     The Hanford Certificate of Organization identifies Idaho Investment Co., Susan, and Jeanne Rigby as the initial members or managers of said company.

14.     In August, 2002, Warnecke entered into a Loan Agreement with the Regional Development Alliance, Inc., an Idaho nonprofit corporation ("RDA") as President and CEO of Nitrocision for a loan of $250,000.

15.     On or about March 27, 2006, Warnecke entered into a subsequent Promissory Note and Security Agreement with RDA as President and CEO of Nitrocision for a loan of $700,000.

16.     The RDA loan was guaranteed by TRUTech, with Warnecke executing said document as "President or Manager" of said company.

17.     The RDA loan agreement was also personally guaranteed by Susan and Ron Warnecke.

18.     Warnecke, as President/CEO/Managing Member of Nitrocision, submitted

quarterly reports to the RDA on Nitrocision's activities, and submitted financial information to the RDA as a part of those reports.

19.    During his tenure as CEO/Managing Member of Nitrocision, Warnecke failed to make timely payments on the RDA loan agreement.

20.    During his tenure as CEO/Managing Member of Nitrocision, Warnecke submitted inaccurate, misstated and false information to the RDA on Nitrocision quarterly reports.

21.    On April 8, 2003 Leadwood Capital ("Leadwood") contributed $2,500,000 capital to Nitrocision, and received 50% ownership in the company.

22.    Thereafter, during 2005, Leadwood informed Warnecke that it wanted to either be paid back its investment, plus a return, or to sell its interest in Nitrocision.

23.    On December 29, 2005, the Warneckes borrowed the sum of $2,740,500 from Baxter State Bank for the purpose of repurchasing Leadwood's ownership interest in Nitrocision.

24.    The Warneckes' loan from Baxter State Bank was personally guaranteed by Rigby, and Rigby's personal assets were pledged to secure the Warneckes' loan.

25.    On or about December 29, 2005, Rigby borrowed $300,000 from Baxter State Bank for the purpose of repurchasing Leadwood's ownership interest in Nitrocision.

26.    The funds borrowed by the Warneckes and Rigby were utilized to acquire Leadwood's ownership interest in Nitrocision, and a total of $3,070,317 was paid to Leadwood for said interest.

27.    The Warneckes personally, and Warnecke, as CEO/Managing Member of Nitrocision, failed to make timely payments on the loan to Baxter State Bank, causing Baxter State Bank to make demand upon Rigby under the guarantee for payment of the loan.

28.    On or about June 11, 2007, Warnecke, as CEO/Managing Member of Nitrocision,

borrowed the sum of $1,000,000 on an open line of credit from Ireland Bank.

29.     The loan was personally guaranteed by Warnecke and Rigby.

30.     On or about June 5, 2008, the Ireland Bank line of credit was increased to $1,800,000.

31.     Warnecke, as CEO/Managing Member of Nitrocision, caused all of the Ireland Bank line of credit to be utilized.

32.     Warnecke, as CEO/Managing Member of Nitrocision, failed to make timely payments on said line of credit loan to Ireland Bank.

33.     Kiehn loaned funds to Nitrocision from her Individual Retirement Account ("IRA"), which loan(s) were personally guaranteed by Warnecke.

34.     Warnecke drew a salary from both Nitrocision and TRUTech.  Warnecke paid Susan a salary from TRUTech.  From 2003 to 2009, Mr. and Mrs. Warnecke drew a total of $1,272,274 from said companies in salary.

## COUNT I

## MISMANAGEMENT - NITROCISION

35.     Defendants re-allege ¶¶ 1-34 as though fully set forth herein.

36.     The Articles of Incorporation of Organization state that management of Nitrocision is vested in managers, and identify the initial manager as "Ron Warnecke."

37.     From  to December 4, 2001 when the company was organized until mid-January 2009, Warnecke was the Managing Member and/or Chief Executive Officer ("CEO") of Nitrocision.

38.     Thereafter, Kiehn served as interim acting CEO of Nitrocision until March 9, 2009.

39.     Warnecke resigned his position(s) with Nitrocision on March 4, 2009, confirming said resignation in writing on or about March 12, 2009.

40.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke failed to properly document and record loans to the company, including loans Warnecke allegedly made personally to Nitrocision.

41.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke failed to properly process, record and document equity member transactions.

42.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke recorded equity transactions as loans to the company from himself, rather than capital contributions.

43.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke caused inaccurate and misleading financial statements and balance sheets to be prepared.

44.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke failed to validate, verify and/or to properly record employee business expenses.

45.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke engaged in income shifting, posting of unbilled and unearned income, and balance sheet manipulation.

46.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke overstated company income on company documents.

47.     Warnecke's actions caused Nitrocision financial statements to be inaccurate and misleading.

48.     During his tenure as Managing Member and/or CEO of Nitrocision, Warnecke engaged in preferential treatment of certain members of Nitrocision, in violation of Nitrocision's

operating agreement and policies and procedures, without approval of the Nitrocision Board of Directors.

49.     During his tenure as Managing Member and/or CEO Warnecke failed to follow proper accounting procedures, and failed to follow safe and sound business practices in his accounting methods.

50.     During his tenure as Managing Member/CEO, Warnecke did not maintain reasonable books, records and accounts of operations and expenditures of Nitrocision.

51.     During his tenure as Managing Member/CEO, Warnecke failed to hold regular meetings of the Nitrocision Board of Directors.

52.     During his tenure as Managing Member/CEO, Warnecke failed to secure the approval of the Nitrocision Board of Directors for actions he took in the name of the company, including, but not limited to, entering into contracts in the name of the company.

53.     During his tenure as Managing Member/CEO, Warnecke misrepresented the financial status of the company to the Nitrocision Board of Directors.

54.     During his tenure as Managing Member/CEO, Warnecke misrepresented the status of contracts and potential contracts with third parties to the Nitrocision Board of Directors.

55.     During his tenure as Managing Member/CEO, Warnecke failed to properly supervise, control and manage subsidiaries of Nitrocision, including the European branch of the company, causing lost revenue and excessive costs to Nitrocision.

56.     During his tenure as Managing Member/CEO, Warnecke failed to act in the best interest of Nitrocision.

57.     During his tenure as Managing Member/CEO, Warnecke entered into contracts and license agreements with third parties which were detrimental to Nitrocision and the other

members of said company.

58.     As a result of the wrongful conduct by Warnecke alleged herein, Defendants have

sustained damages in an amount to be proven at trial.

**COUNT II**

**MISMANAGEMENT - TRUTECH**

59.     Defendants re-allege paragraphs 1-58 as though fully set forth herein.

60.     From August 11, 1999 when the company was organized until March 2009,

Warnecke was the Managing Member of TRUTech.

61.     Warnecke resigned his position as Managing Member of TRUTech, and

confirmed that resignation in writing on or about March 12, 2009.

62.     During his tenure as Managing Member of TRUTech, Warnecke caused

inaccurate and misleading financial statements and balance sheets to be prepared.

63.     During his tenure as Managing Member of TRUTech, Warnecke failed to

validate, verify and/or to properly record employee business expenses.

64.     During his tenure as Managing Member of TRUTech, Warnecke engaged in

income shifting, posting of unbilled and unearned income, and balance sheet manipulation.

65.     During his tenure as Managing Member of TRUTech, Warnecke misstated

company income on company documents.

66.     Warnecke's actions caused TRUTech financial statements to be inaccurate and

misleading.

67.     During his tenure as Managing Member, Warnecke failed to follow proper

accounting procedures, and failed to follow safe and sound business practices in his accounting

methods.

68.     During his tenure as Managing Member, Warnecke did not maintain reasonable books, records and accounts of operations and expenditures of TRUTech.

69.     During his tenure as Managing Member/CEO, Warnecke failed to properly supervise, control and manage employees of TRUTech, including coordinating work for said employees, causing lost revenue and excessive costs to TRUTech.

70.     During his tenure as Managing Member/CEO, Warnecke failed to act in the best interest of TRUTech.

71.     As a result of the wrongful conduct by Warnecke alleged herein, Defendants have sustained damages in an amount to be proven at trial.

## COUNT IV

## BREACH OF CONTRACT - RIGBY

72.     Defendants re-allege paragraphs 1 through 71 as though fully set forth herein.

73.     On February 15, 2008, the Warneckes obtained a loan from The Baxter State Bank in the amount of $3,050,116.50, Loan No. 140950.

74.     Rigby personally guaranteed Loan No. 140950.

75.     The Warneckes failed to make required payments, and defaulted on Loan No. 140950.

76.     Baxter offered to extend the loan if the Warneckes would sign an extension agreement.

77.     The Warneckes refused to sign, and/or refused to acknowledge the request for an extension agreement.

78.     Thereafter, Baxter made demand on Rigby based upon his personal guarantee.

79.     Rigby purchased the note, security agreement, and all rights to the collateral

pledged by the Warneckes to avoid default with Baxter.

80.     The Warneckes have failed to make any payment on the note.

81.     Due to the Warneckes' default, Rigby has sustained damages in an amount to be proven at trial.

## COUNT V

## BREACH OF FIDUCIARY DUTY - NITROCISION

82.     Defendants re-allege paragraphs 1-81 as though fully set forth herein.

83.     As CEO/Managing Member of Nitrocision, Warnecke owed a fiduciary duty to the other Nitrocision Members.

84.     Warnecke owed a fiduciary duty of loyalty to Nitrocision.

85.     Warnecke breached his fiduciary duty to other Nitrocision Members when he failed to properly document and record loans to the company, including loans Warnecke allegedly made personally to Nitrocision.

86.     Warnecke breached his fiduciary duty to other Nitrocision Members when he failed to properly process, record and document equity member transactions.

87.     Warnecke breached his fiduciary duty to other Nitrocision Members when he caused inaccurate and misleading financial statements and balance sheets to be prepared.

88.     Warnecke breached his fiduciary duty to other Nitrocision Members when he engaged in income shifting, posting of unbilled and unearned income, and balance sheet manipulation.

89.     Warnecke breached his fiduciary duty to other Nitrocision Members when he engaged in preferential treatment of certain members of Nitrocision, in violation of Nitrocision's operating agreement and policies and procedures, without approval of the Nitrocision Board of

Directors.

90.     Warnecke breached his fiduciary duty to other Nitrocision Members when he failed to follow proper accounting procedures, and failed to follow safe and sound business practices in his accounting methods.

91.     Warnecke breached his fiduciary duty to other Nitrocision Members when he did not maintain reasonable books, records and accounts of operations and expenditures of Nitrocision.

92.     Warnecke breached his fiduciary duty to other Nitrocision Members when he failed to hold regular meetings of the Nitrocision Board of Directors.

93.     Warnecke breached his fiduciary duty to other Nitrocision Members when he failed to secure the approval of the Nitrocision Board of Directors for actions he took in the name of the company, including, but not limited to, entering into contracts in the name of the company.

94.     Warnecke breached his fiduciary duty to other Nitrocision Members and his duty of loyalty to Nitrocision when he misrepresented the financial status of the company to the Nitrocision Board of Directors.

95.     Warnecke breached his fiduciary duty to Nitrocision Members and his duty of loyalty to Nitrocision when he misrepresented the status of contracts and potential contracts with third parties to the Nitrocision Board of Directors.

96.      Warnecke breached his fiduciary duty to Nitrocision Members and his duty of loyaly to Nitrocision when he failed to properly supervise, control and manage subsidiaries of Nitrocision, including the European branch of the company, causing lost revenue and excessive costs to Nitrocision.

97.     Warnecke breached his fiduciary duty to Nitrocision Members and to Nitrocision when he submitted multiple reimbursement requests for the same alleged expense.

98.     Warnecke breached his fiduciary duty to Nitrocision Members and to Nitrocision when he failed to keep accurate records of vacation time taken.

99.     Warnecke breached his fiduciary duty to Nitrocision Members and to Nitrocision when he submitted expense reimbursement requests for vacation travel with his family.

100.    Warnecke breached his fiduciary duty to Nitrocision Members and to Nitrocision when he entered into contracts and license agreements with third parties which were detrimental to Nitrocision.

101.    As a result of the wrongful conduct by Warnecke alleged herein, Defendants have sustained damages in an amount to be proven at trial.

## COUNT VI

## BREACH OF FIDUCIARY DUTY – TRUTECH

102.    Defendants re-allege paragraphs 1-101 as though fully set forth herein.

103.    As CEO/Managing Member of Nitrocision, Warnecke owed a fiduciary duty to Rigby, the other TRUTech Member.

104.    Warnecke owed a fiduciary duty of loyalty to TRUTech.

105.    Warnecke breached his fiduciary duty to Rigby and TRUTech when he caused inaccurate and misleading financial statements and balance sheets to be prepared.

106.    Warnecke breached his fiduciary duty to Rigby and TRUTech when he failed to validate, verify and/or to properly record employee business expenses.

107.    Warnecke breached his fiduciary duty to Rigby and TRUTech when he engaged in income shifting, posting of unbilled and unearned income, and balance sheet manipulation.

19. ANSWER, COUNTERCLAIM AND DEMAND FOR JURY TRIAL

108.     Warnecke breached his fiduciary duty to Rigby and TRUTech when he misstated company income on company documents, causing TRUTech financial statements to be inaccurate and misleading.

109.     Warnecke breached his fiduciary duty to Rigby and TRUTech when he failed to follow proper accounting procedures, and failed to follow safe and sound business practices in his accounting methods.

110.     Warnecke breached his fiduciary duty to Rigby and TRUTech when he did not maintain reasonable books, records and accounts of operations and expenditures of TRUTech.

111.     Warnecke breached his fiduciary duty to Rigby and TRUTech when he failed to properly supervise, control and manage employees of TRUTech, including coordinating work for said employees, causing lost revenue and excessive costs to TRUTech.

112.     As a result of the wrongful conduct by Warnecke, Rigby and TRUTech have been damaged in an amount to be proven at trial.

## COUNT VII

## FRAUDULENT MISREPRESENTATION

113.     Defendants re-allege paragraphs 1-112 as though fully set forth herein.

114.     During his tenure as Managing Member/CEO of Nitrocision and TRUTech, Warnecke represented to Rigby, to Kiehn, and to third parties that certain contracts had been obtained, were in progress and/or had been performed and billed.

115.     The representations were false, and Warnecke knew that they were false.

116.     The representations were material, and had direct bearing on the continued viability of Nitrocision, its future profits or lack thereof, and business trips and expenses for which Warnecke claimed reimbursement rights from Nitrocision.

117.   Rigby and Kiehn reasonably relied upon Warnecke's representations, to their detriment.

118.   Rigby's and Kiehn's reliance was justifiable because of Warnecke's position as CEO/Managing Member of Nitrocision and TRUTech, and because Warnecke was managing day-to-day operations of Nitrocision, including entering into contracts for and on behalf of Nitrocision.

119.   Warnecke's misrepresentations induced Rigby to lend money to Nitrocision, and to personally guarantee Nitrocision loans from third parties.

120.   Warnecke's misrepresentations induced Rigby to solicit investors and potential future members of Nitrocision.

121.   Warnecke's misrepresentations induced Kiehn to lend money to Nitrocision.

122.   As a result of the wrongful conduct by Warnecke alleged herein, Rigby and Kiehn have sustained damages in an amount to be proven at trial.

## COUNT IX

## ATTORNEY FEES AND COSTS

123.   Defendants re-allege paragraphs 1-122 as though fully set forth herein.

124.   Defendants have retained counsel to defend this action and to prosecute their counterclaim herein.

125.   Defendants should be awarded their reasonable attorney fees and costs of suit incurred herein pursuant to I.C. § 12-120 and § 12-121.

126.   Defendants should be awarded their reasonable attorney fees and costs pursuant to the provisions of the contracts between the parties.

127.   Defendants should be awarded their reasonable attorney fees and costs in

accordance with I.C. § 45-615(3).

WHEREFORE, Defendants pray:

1.      For damages due to Warnecke's mismanagement of Nitrocision in an amount to be determined at trial.

2.      For damages due to Warnecke's mismanagement of TRUTech in an amount to be determined at trial.

3.      For damages due to Warnecke's breach of contract with Rigby in an amount to be determined at trial.

4.      For damages due to Warnecke's breach of fiduciary duty to Nitrocision and other Nitrocision Members in an amount to be determined at trial.

5.      For damages due to Warnecke's breach of fiduciary duty to TRUTech and Rigby in an amount to be determined at trial.

6.      For damages due to Warnecke's fraudulent misrepresentations to Rigby and Kiehn in an amount to be determined at trial.

7.      For attorney fees and costs of suit pursuant to applicable Idaho law.

8.      For such other and further relief as the Court deems just in the premises.

DATED this 27th day of August, 2010.

_____/s/_____
John L. Stosich
Pike, Herndon, Stosich & Johnston
Attorneys for Defendants


**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b), F.R.C.P., Defendants demand trial by a jury of twelve persons.


22. ANSWER, COUNTERCLAIM AND DEMAND FOR JURY TRIAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of August, 2010, I caused a true and correct copy of

the foregoing Answer, Counterclaim and Demand for Jury Trial to be electronically filed with

the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the

following persons:

> John M. Howell
> Bradley S. Richardson
> Brassey, Wetherell & Crawford, LLP
> jhowell@brassey.net
> bsr@brassey.net

_____/s/_____
John L. Stosich